UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PATRICIA SCHWEND, *n/k/a* <br> PATRICIA SCHWEND-McCUMMISKEY, <br><br> Plaintiff, <br> vs. <br><br> US BANK, N.A., et al. <br><br> Defendants. | Case No. 4:10-cv-01590-CDP |

**DEFENDANTS' REPLY IN SUPPORT OF SUMMARY JUDGMENT AND RESPONSE TO PLAINTIFF'S RULE 56(D) REQUEST**

Defendants US Bank, N.A. ("US Bank") and Wells Fargo Bank, N.A. ("Wells Fargo") announced their intention to move for summary judgment promptly after Plaintiff filed her Second Amended Complaint: "Defendants anticipate filing soon a dispositive motion. Briefing on the motion will proceed according to the Local Rules of this Court and the Federal Rules of Civil Procedure." (Joint Scheduling Order, dated November 11, 2011, Doc. #87). This Court then entered an amended Case Management Order ("CMO") expressly providing for the filing of a pre-certification dispositive motion and establishing a briefing schedule in anticipation of a summary judgment motion (*i.e.*, 30 days for opposition brief and 10 days for reply brief). (Doc. #89). In accordance with this Order, Defendants timely filed their summary judgment motion. (Doc. #99). That motion is based on the discovery record created over the past year relating to Plaintiff's individual claim and is centered on UCC law that the holder of a note is entitled to foreclose on real property.

Plaintiff offers no response to the substance of Defendants' summary judgment motion nor does she cite any authority indicating how her proposed topics of discovery relate to a plausible legal theory. Instead, Plaintiff now sees imagined barriers to this Court's consideration of summary

1

judgment, including (i) a so-called "general rule" against ruling on summary judgment prior to class certification, (ii) the Case Management Order entered by this Court and (iii) a purported lack of merits discovery. Plaintiff's attempt to avoid summary judgment is contrary to federal law governing summary judgment. It is also unwarranted by the history of this case —which includes extensive discovery relating to Plaintiff's individual claim.

I.   **This Court May Rule on Summary Judgment Before Ruling on Class Certification**

Plaintiff ignores the Advisory Committee Notes to Rule 23 approving of pre-certification dispositive motions[1] and misstates the law when she asserts "a general rule regarding deciding class certification first." (Doc. #104 at 4). To the contrary: "The general rule is that pre-certification dispositive rulings are not prohibited. A district court may, in proper circumstances, rule on a dispositive motion before ruling on class certification." 5 *Moore's Federal Practice* § 23.81[2] (2011); accord Telfair v. First Union Mortg. Corp., 216 F.3d 1333, 1343 (11th Cir. 2000) ("It was within the court's discretion to consider the merits of the claims before their amenability to class certification."); Schweizer v. Trans Union Corp., 136 F.3d 233, 239 (2d Cir. 1998) (stating that nothing in Rule 23 precludes a court from examining the merits on a proper motion for summary judgment simply because the motion precedes the resolution of class certification); Askew v. Holladay, No. 4:09CV00058 JMM/HDY, 2009 WL 1767632, at *10 (E.D. Ark. June 23, 2009) ("In appropriate cases the Court may dismiss the case . . . by 'us[ing] an accelerated summary judgment

---

[1] *See* Fed. R. Civ. P. 23(c)(1)(A) 2003 Advisory Committee Notes, at ¶¶ 2, 4) (stating that a valid reason for "deferring the initial certification decision" is addressing a motion for summary judgment as to an individual plaintiff); accord Davis v. Retirement Plan of Phibro Animal Health Corp., No. 08-cv-779-JPG-PMF, 2011 WL 3793638, at *2 (S.D. Ill. Aug. 24, 2011) (deferring a ruling on plaintiff's pending motion for class certification until the court ruled on the parties' cross motions for summary judgment); O'Bar v. Lowe's Home Centers, Inc., No. 5:04-cv-00019-W, 2007 WL 1299180, at *1 n.1 (W.D.N.C. May 2, 2007); Talley v. NCO Fin. Sys., Inc., No. 2:06-CV-48-PPS-PRC, 2006 WL 2927596, at *2 (N.D. Ind. Oct. 12, 2006) (granting motion to stay class certification briefing until the court ruled on defendant's motion for summary judgment).

procedure *before class certification* to test the plaintiff[s'] right to proceed to trial.'") (quoting Shook v. El Paso County, 386 F.3d 963, 974 n.6 (10th Cir. 2004)) (emphasis and alterations in original).

The Eighth Circuit has repeatedly affirmed grants of summary judgment passed down prior to a ruling on class certification. See, e.g., Ince v. Aetna Health Mgmt., Inc., 173 F.3d 672, 674 (8th Cir. 1998); Shipman v. Missouri Dept. of Family Servs., 877 F.2d 678, 681 (8th Cir. 1989); Vervaecke v. Chiles, Heider & Co., 578 F.2d 713, 719-20 (8th Cir. 1978). One of the often-recognized circumstances for taking this approach is where the defendant seeks summary judgment on plaintiff's individual claim and resolution of summary judgment will avoid costly and needless litigation regarding class certification. Curtin v. United Airlines, Inc., 275 F.3d 88, 92 (D.C. Cir. 2001); Thompson v. County of Medina, 29 F.3d 238, 241 (6th Cir. 1994) (quoting Wright v. Schock, 742 F.2d 541, 543-44 (9th Cir. 1984)). That is precisely what we have here.

The consideration of summary judgment at this stage is especially appropriate in this case because Defendants' Summary Judgment Motion challenges Plaintiff's standing. For example, in response to Defendants' targeted summary judgment argument that the foreclosure was proper under the Missouri UCC because US Bank held the original, endorsed in blank note at the time of the foreclosure, Plaintiff's proposed discovery topics seek wide-ranging discovery on how her loan was pooled with other loans and securitized. As recognized by In re Washington, No. 11-41288, 2011 WL 6010247, at *5 (Bankr. W.D. Mo. Dec. 1, 2011), such considerations are irrelevant to the key question under the UCC: who held the note at the time of the foreclosure? Section II of Defendants' Summary Judgment Memorandum cites numerous authorities establishing that plaintiff has no standing to base her claim on the securitization of her loan. (Doc. # 101 at 11-14). Because the issue of Plaintiff's standing is a legal threshold issue, it is appropriate to address standing at this stage in the case and accords with Eighth Circuit precedent directing lower courts to decide standing

3

issues at the outset of litigation.  See Int'l Ass'n of Fire Fighters, Local 2665 v. City of Clayton, 320 F.3d 849, 850 (8th Cir. 2003); see also Steger v. Franco, Inc., 228 F.3d 889, 892 (8th Cir. 2000).

Plaintiff filed claims based on alleged wrongful foreclosure in June 2010.  (Doc. #1).  She propounded extensive discovery requests pursuant to an initial CMO that required the completion of all discovery by September 1, 2011.  (Doc. #28).  Plaintiff first served discovery requests on April 14, 2011.  As a courtesy and because possession of the original note was dispositive of the issues in her wrongful foreclosure claim, Defendants produced a copy of the endorsed-in-blank note to Plaintiff's counsel on April 28, 2011 and offered to let Plaintiff view the original, well in advance of the due date of Plaintiff's discovery requests.  After obtaining a short extension from Plaintiff, Defendants served responses to the written discovery requests on June 2, 2011.[2]  Defendants provided detailed objections—even citing case authorities—as to why Plaintiff was not entitled to documents related to the securitization of Plaintiff's loan.  Nonetheless, Defendants produced a copy of the Pooling and Servicing Agreement ("PSA") (copies of which are publicly available),[3] along with other loan documents, and issued a subpoena to the depositor of the PSA, Park Place Securities, Inc. ("Park Place") in California, for additional documents on May 9, 2011.  On May 12, 2011, Defendants filed a Notice of Third Party Subpoena, including a copy of the subpoena sent to Park Place.  (Doc. #47).  After Park Place objected to producing documents in the absence of a protective order (Doc. #58-2), Plaintiff effectively delayed the production of those documents by objecting to a proposed protective order and forcing Defendants to file a motion for a protective order to obtain such documents from Park Place.  (Doc. #57 and #58).  Although Defendants

---

[2] Plaintiff likewise took an extension on her responses Defendants' discovery requests served on May 5, 2011.

[3] See Pooling and Servicing Agreement, http://www.sec.gov/Archives/edgar/data/1308503/000088237704002475/d279956ex4-1.txt.

provided detailed objections with precedential support and Plaintiff did not challenge them, Defendants still took affirmative steps to locate and obtain documents relating to the history of the pooling of the loan into an asset backed security. Defendants even later produced these documents[4] to Plaintiff, after Park Place agreed to produce redacted versions documents absent a protective order, on July 23, 2011.

In July 2011, Plaintiff sought leave to file amend her complaint to add class action allegations. (Doc. #67). Defendants opposed the amendment on the grounds that it was futile under governing UCC law and the facts known to the parties through discovery. (Doc. #74). Relying solely on the "face of the proposed amended complaint," this Court granted Plaintiff leave to amend. (Doc. #80 at 7). Defendants expressed their intent to file a dispositive motion, answered the complaint, and timely filed their motion. (Doc. #87, #91 and #99). Defendant's motion is based on undisputed facts regarding Plaintiff's loan documents and Missouri law governing foreclosure rights. This fact record and the well-developed legal rules governing foreclosure stand in sharp contrast to Plaintiff's proposal to embark on a year's-worth of class certification discovery and briefing regarding a purported class said to encompass "thousands of Missouri homeowners." (Doc. #104 at 1). As the above cases recognize, there is simply no reason for such difficult and costly proceedings if Plaintiff cannot maintain an individual claim.

The cases cited at page 4 of Plaintiff's Response provide no support for delaying summary judgment since they concern attempts by *plaintiffs* to obtain a ruling on the merits before class certification. These cases discuss ruling on class certification before summary judgment as a way to enforce the rule against "one-way intervention" which "'bars potential class members from waiting

---

[4] On July 23, 2011, Defendants produced a redacted copy of the signed Mortgage Loan Purchase Agreement, a copy of the signed PSA, and a signed copy of the Custodial Agreement as Bates Numbers PPS00001-PPS00227.

5

on the sidelines to see how the lawsuit turns out and, if a judgment for the class is entered, intervening to take advantage of the judgment,' while only the named plaintiff would be bound by a judgment in favor of the defendant." Mendez v. Radec Corp., 260 F.R.D. 38, 44 (W.D.N.Y. 2009) (quoting Amati v. City of Woodstock, 176 F.3d 952, 957 (7th Cir.), cert. denied, 528 U.S. 985 (1999)); see also Bertrand ex rel. Bertrand v. Maram, 495 F.3d 452, 455 (7th Cir. 2000) ("Apparently the district court saw class suits as opportunities for one-way intervention: if the representative plaintiff wins, then class certification extends the victory to a larger group."); In re Philip Morris Inc., 214 F.3d 132, 134 (2d Cir. 2000) ("Rule 23 was substantially amended in 1966, in part to prevent prejudice to defendants that can arise when a determination of class certification is postponed until after trial."). The quotes from these cases in Plaintiff's brief (Doc. #104 at 4) are misleading when lifted from the head-I-win-tails-you-lose context of one-way intervention. There is no authority for precluding summary judgment here, where Defendants seek summary judgment as to Plaintiff's individual claim and Plaintiff has yet to move for class certification.[5]

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). A district court's power to manage cases efficiently does not evaporate merely because a plaintiff has lodged class action allegations.

---

[5] Two other cases cited by plaintiff involve unusual procedural issues with holdings that have no application to the present circumstances: See Schwarzschild v. Tse, 69 F.3d 293, 294 (9th Cir. 1995) ("We consider here a narrow question of procedure involving notices in class cases."); Bieneman v. City of Chicago, 838 F.2d 962, 963 (dismissing appeal for want of jurisdiction, where district court expressly reserved ruling on class certification when dismissing complaint). Both cases, however, acknowledge a district court's discretion to enter judgment for a defendant prior to a ruling on class certification. See Schwarzschild, 69 F.3d at 297 (noting that a defendant may move for summary judgment on the merits and rely on *stare decisis* to bar subsequent cases, if any); Bieneman, 838 F.2d at 963 (explaining that disposition of a would-be class representative's claim is a final appealable order if the district court says nothing about class action allegations).

## II. The Court's Case Management Order Expressly Provides For Defendants' Pre-Certification Motion

The parties presented a Joint Scheduling Order which states Defendants' expectation of promptly filing a dispositive motion. (Doc. #87). The Court then entered its amended CMO and imposed a deadline for such pre-certification motion. (Doc. #89).[6] In an exercise of true chutzpah, Plaintiff asserts that this same CMO is actually a bar on the Court's consideration of summary judgment until there is full class certification discovery and briefing followed, if successful, by class-wide discovery on the merits. According to Plaintiff, the Court's deadline for a "pre-certification dispositive motion" actually means not a dispositive motion but rather a "preemptive attack on class certification." (Doc. #104 at 5, n.2.) "This recalls Lewis Carroll's classic advice on the construction of language: "'When I use a word,' Humpty Dumpty said, in rather a scornful tone, 'it means just what I choose it to mean—neither more nor less.'"" TVA v. Hill, 437 U.S. 153, 173 n.18 (1978) (quoting *Through the Looking Glass*, in *The Complete Works of Lewis Carroll* 196 (1939).[7]

Going farther, Plaintiff asserts the amended CMO is in fact an agreement among the parties and the Court to resolve class certification before summary judgment because it bifurcates class and merits discovery. (Doc. #104 at 5). But the amended CMO governs only future discovery and follows the usual approach of deferring class-wide merits discovery unless and until a class is certified. Given that Plaintiff had been conducting merits discovery on her individual claim for more than a year at the time the amended CMO was entered, there can be no claim that the amended CMO is an agreement to defer summary judgment. Nor can it be said that Plaintiff was

---

[6] The deadline in the amended CMO was extended upon a consent motion and by Court Order from January 13 to January 20. (Doc. #94 and 95).

[7] Plaintiff and her counsel had no difficulty understanding that dispositive motions include summary judgment when they filed the initial Joint Proposed Scheduling Plan, which provides: "Dispositive motions shall be filed with the clerk on or before September 16, 2011. In accordance with Local Rule 7-4.01(B)-(C), any memorandum in opposition to a motion for summary judgment will be filed with the clerk thirty (30) days later — on October 17, 2011." Doc. 27 at 3.

focused on class certification to the exclusion of the merits when conducting discovery in 2011 prior to filing her class allegations. Moreover, Plaintiff has been on notice since November that Defendants would be filing their motion but took no additional discovery during the period. In Defendants' Memorandum in Opposition to the Motion for Leave to File Second Amended Complaint filed on August 5, 2011, Defendants previewed the same arguments that are now raised in support of their Summary Judgment Motion, including using the same affidavits and previously produced documents. (Doc. #74).

For these reasons, none of Plaintiff's cases is relevant here. See Burdette v. Vigindustries Inc., No. 10-1083-JAR, 2011 WL 1702509 (D. Kan. May 4, 2011) (holding that summary judgment motion filed before dispositive motion deadline and while parties were focused on class certification was premature); Yoakum v. PBK Architects, Inc., No. H-10-00278, 2010 WL 4053956, at *3 (S.D. Tex. Oct. 14, 2010) (plaintiff's "focus during discovery was on meeting" class certification standard); Mueller v. CBS, Inc., 200 F.R.D. 242, 244-45 (W.D. Pa. 2001) (holding that plaintiff's summary judgment motion was premature where "by agreement of the parties, discovery in this matter has proceeded only to questions related to class certification").

### III. Plaintiff Fails to Carry Her Burden Under Rule 56(d)

Under Rule 56(d), the party seeking to defer summary judgment must make two showings. They must "identify specific facts that further discovery might uncover and show how those facts would rebut [movant's] showing of the absence of genuine issues of material facts." Chambers v. Travelers Companies, Inc., No. 11-1473, 2012 WL 399919, at *6 (8th Cir. Feb. 9, 2012). They must also demonstrate an inability to conduct the discovery and diligence in attempting to do so. Here, Plaintiff fails all requirements.

Plaintiff's Second Amended Complaint asserts that Defendants lacked standing to foreclose on her property. (Doc. #81). US Bank and Wells Fargo's Summary Judgment Motion presented

two succinct arguments in response:  (1) US Bank was the holder of Plaintiff's endorsed in blank note (bearer paper) and therefore it was authorized to foreclose on plaintiff's property under Missouri's UCC, and (2) Plaintiff has no standing to challenge the foreclosure under the securitization documents relating to the PSA. (Doc. #101 at 6-13).

As for Plaintiff's final assertion that Defendants were estopped from pursuing foreclosure while "purport[ing] to be in the process or approving modifications of loans," US Bank and Wells Fargo cited authorities showing that federal courts have repeatedly rejected such claims because there is no private right of action under current federal loan programs and such claims are barred by Missouri's statute of frauds.

In her Response and accompanying affidavit from her attorney, Plaintiff provides a laundry list of discovery that she claims must be completed before she can make any response to any facts set forth by Defendants.  The authority that Plaintiff cites in support of her ability to take this discovery (none) is telling.  Other than generalized assertions that it is too early to address the merits (see section I above), Plaintiff cites no cases in support of why her requested discovery bears any relation to legal issues at stake.  To conclude that this discovery must be allowed, this Court would have to ignore the Missouri UCC, precedent from this district and federal courts across the country establishing that plaintiff has no standing to challenge the securitization process of her loan, and numerous cases holding that Plaintiff's loan modification allegations are legally without merit. As a result, Plaintiff's unsupported wish list of items she would like to discover falls well short of satisfying her Rule 56(d) obligations.  See MHC Inv. Co. v. Racom Corp., 209 F.R.D. 431, 434 (S.D. Iowa 2002) ("In order to qualify for the protection afforded by Fed. R. Civ. P. 56[d], a party must not only articulate what additional discovery is necessary, they must also demonstrate how it will enable them to defeat the motion for summary judgment.") (citing Allen v. Bridgestone/Firestone, Inc., 81 F.3d 793, 797-98 (8th Cir. 1996)).

9

A.  Plaintiff's Broad Ranging Discovery into the Process of Securitizing Her Loan Has No Bearing on Her Claim of Wrongful Foreclosure.

Paragraph 8 of Plaintiff's counsel's affidavit lists thirty-one lettered subparts of discovery that Plaintiff desires. (Doc. # 104-1 at. 3-6). More than half of these relate to Plaintiff's broad attacks based on the pooling of plaintiff's loans (securitization) with other loans.[8] Under the Missouri UCC, however, the only salient inquiry is who possessed the note at the time of foreclosure. Plaintiff's discovery requests go far astray of who held the note at the time of her foreclosure. Unconstrained by a supportable legal theory that would provide parameters for her discovery, she seeks discovery of such varied items as the process of securitization (*e.g.*, Does the REMIC qualify as a trust? Were the notes used as collateral? Were SEC Regulations violated?) and the subjective intent of Defendants (*e.g.*, Why did Defendants choose not to record all assignments of the notes? Why did the holder of the note appoint the trustee?). (Doc. #104 at 10-11 and Doc. #104-1 at 3-6).

In asserting the need for these requests, Plaintiff does not even attempt to distinguish or challenge the authority from this Circuit cited in the Summary Judgment Memorandum that has rejected borrower attempts to mount challenges based upon the securitization of loans or the pooling and servicing agreements. See In re Washington, No. 11-41288, 2011 WL 6010247, at *5 (holding that such alleged violations of a pooling and servicing agreement, even if true, were irrelevant to a party's standing to enforce a note under the Missouri UCC and declined to consider such allegations as relevant contested facts for the purposes of a motion for summary judgment); see also Greene v. Home Loan Servs., Inc., No. 09-719-DWF/JJK, 2010 WL 3749243, at *4 (D. Minn. Sept. 21, 2010) (holding that plaintiff borrowers have no standing to bring such claims because they were not parties to pooling and servicing agreements); see also Wilson v. Bank of America Corp.,

---

[8] Eighteen subparts Plaintiff's counsel's affidavit relate to the securitization process: a-e, g-k,m-o, p, z, aa-dd  (Doc. #104-1 3-6).

No. 4:10-CV-512-CAS, 2010 WL 3843781, at *3-4 (E.D. Mo. Sept. 27, 2010) (rejecting claim by pro se plaintiffs that their loan had been "illegally securitized").

Similarly, Plaintiff raises pure legal issues under the guise of fact discovery. For example, Plaintiff wants to know why all the assignments of the note were not recorded and why the "holder" of the note appointed the successor trustee of the deed instead of the original lender. Both of these legal issues are addressed in Defendants' Summary Judgment Memorandum. See In re Box, No. 10-20086, 2010 WL 2228289, at *5 (Bankr. W.D. Mo. June 3, 2010) ("[T]he transfer of a note serves to also transfer the transferor's rights under a deed of trust, regardless of whether that transfer is recorded."); Horvath v. Bank of New York, 641 F.3d 617, 625 (4th Cir. 2011) (holding "the term 'Lender' as applying not only to [the original lender] but to any subsequent purchaser of the deed of trust").

The only relevant fact is whether US Bank held Plaintiff's endorsed-in-blank note at the time of the foreclosure. Plaintiff's discovery topics relating to the securitization process such as how US Bank came to ultimately possess the note, whether the securitization agreements were flawed, and whether the terms of the PSA were followed are irrelevant. As established by Defendants' supporting affidavits, US Bank held the note at the time of the foreclosure. Plaintiff does not controvert this fact nor provide any support for why its additional discovery addresses this straightforward and UCC-dispositive issue.

      B.    <u>Plaintiff's Discovery Relating to Loan Modifications is Not Relevant to Any Material Fact.</u>

In her Second Amended Complaint, Plaintiff asserts that Defendants were estopped from pursuing foreclosure while "purport[ing] to be in the process of approving modifications of loans" because Defendants in fact had "no intent to modify the loans" since participation in the federal loan modification programs would cause dire tax consequences (SAC ¶¶ 60-64). As explained in section III of Defendants' Summary Judgment Memorandum (Doc. #101, 14-15), federal courts

11

have repeatedly rejected such claims because there is no private right of action under current federal programs.  See e.g., Bogdan v. Countrywide Home Loans, No. CIV-F-09-1055 AWI SMS, 2010 WL 1241540, at *9 (E.D. Cal. Mar. 26, 2010); Kravich v. Wells Fargo Home Mortg., No. 2:09-CV-01061-GEB-KJM, 2010 WL 582116, at *7 (E.D. Cal. Feb. 11, 2010); Wigod v. Wells Fargo Bank, N.A., No. 10 CV 2348, 2011 WL 250501, at *4 (N.D. Ill. Jan. 25, 2011); Gonzales v. First Franklin Loan Servs., No. 1:09-CV-00941-AWI-GSA, 2010 WL 144862, at *18 (E.D. Cal. Jan. 11, 2010); Regions Bank v. Homes by Williamscraft, Inc., No. 1:09-CV-91-TWT, 2009 WL 3753585, at *2 (N.D. Ga. Nov. 6, 2009); Pantoja v. Countrywide Home Loans, Inc., 640 F. Supp. 2d 1177, 1185 (N.D. Cal. 2009); Ramirez v. Litton Loan Servicing LP, No. CV-09-0319-PHX-GMS, 2009 WL 1750617, at *1 (D. Ariz. June 22, 2009).

Judge Limbaugh, Jr. recently acknowledged this lack of borrower private right of action to dismiss claims premised on alleged violations of the federal mortgage programs created under Emergency Economic Stabilization Act.  See Dugger v. Bank of America/Countrywide Loans, No. 1:10 CV 00076-SNLJ, 2010 WL 3258383, at *2 (E.D. Mo. Aug. 16, 2010) (dismissing borrowers' claim because "neither EESA, TARP, nor HAMP provides a private right of action to individual borrowers").  Another federal district court not only acknowledged this lack of a private right of action but also held that HAMP does not require a lender to modify a loan.  See Lucero v. Countrywide Bank N.A., No. 09 cv 1742 BTM (BLM), 2010 WL 1880649, at *3-4 (S.D. Cal. May 10, 2010) (finding that a lender was not required to modify a loan based on a lender's HAMP Participation Agreement to dismiss claims based on a failure to modify a loan).

Undeterred by the legion of authority indicating that such claims are not legally viable, Plaintiff proposes to engage in a loan modification fishing expedition,[9] seeking documents regarding

---

[9] Subparts s-y of Plaintiff's counsel's affidavit are discovery topics related to the loan modifications. (Doc. 104-1 at 5).

whether Defendants received HAMP funds and general policies regarding modifications. Plaintiff articulates no argument sufficient to satisfy the requirements of Rule 56(d) how such discovery would support a material fact that would counter the legal arguments raised in Defendants' Summary Judgment Motion. Likewise, Plaintiffs do not explain how such discovery avoids the application of Missouri's Statute of Frauds.

C. <u>Plaintiff's Remaining Requests Fail to Satisfy the Rule 56(d) Requirements</u>

The remaining topics[10] for discovery include the authenticity of documents, whether a signatory of the Assignment of Successor Trustee reviewed the documents, and Plaintiff's request to inspect the vault where the note is currently held.

Taking each of these requests in turn, other than saying that she wants discovery as to whether any of the documents that have been produced are authentic, Plaintiff has not articulated any specific concerns with authenticity. Each of the documents relied on in the summary judgment motion has an accompanying affidavit that establishes the authenticity of the document in compliance with Federal Rules of Evidence 901(a) and (b)(1). See <u>Deptula v. Amacker, L.L.C.</u>, No. 4:10 CV 1542 DDN, 2011 WL 3235714, at *2 (E.D. Mo. July 27, 2011) (stating that supporting affidavits authenticate evidence in accordance with Rule 901). Is Plaintiff merely wanting to ask a document custodian whether the document is what it purports to be? Plaintiff's broad, unsupported challenge to "authenticity" fails to satisfy her burden.

In subpart m, Plaintiff poses several questions about the signatory of the Assignment of Successor Trustee. In that document, Wells Fargo, as the attorney in fact for US Bank, appointed the successor trustee under the deed of trust based upon the authority of US Bank holding the note. As set forth in the Summary Judgment Motion and unchallenged by Plaintiff, US Bank in fact held

---

[10] These miscellaneous topics are listed in subparts f, l, and r of Plaintiff's counsel's affidavit. (Doc. # 104-1 at 4 and 5)

the note that that time.  (Doc. #101 at 7-10).  As a result, US Bank's ability to appoint a successor trustee is a pure legal issue that is established by US Bank's possession of the note.

Finally, Plaintiff asserts that she needs to inspect the vault where the notes are allegedly held. Again, Plaintiff fails to articulate why she needs to inspect the vault and which vault she is referencing.  At the time of the foreclosure, the note was held by US Bank's custodian Deutsche. Currently, the note is held in the vault at Bryan Cave and has been available for inspection since April 28, 2011.  Although, the undersigned counsel has previously extended invitations to Plaintiff's counsel to view the original note, Plaintiff has not requested an inspection of the original note.

**IV.     Plaintiffs Have Failed to Respond to the Substance of Defendants' Summary Judgment Motion and the Entry of Summary Judgment is Warranted**

Filing a Rule 56(d) request "does not, by itself, defer the due date for the response or relieve the party of complying with Rule 56(c) in response that it might file."  11 *Moore's Federal Practice* § 56.101[4] (2011).  A party filing a Rule 56(d) request, therefore, must either "seek relief in advance of the due date for the response to summary judgment," file its substantive summary judgment response along with its 56(d) request, or risk waiver of any response.  Id.; see also Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is disputed must support the assertion by . . . (A) citing to particular parts of materials in the record . . . ."); Fed. R. Civ. P. 56(e) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: . . . (3) grant summary judgment . . . .").  Plaintiff's filing does not contest a *single* fact set for in Defendants' Statement of Undisputed Facts; nor does it challenge the established legal principles upon which Defendants' motion for summary judgment is based.

Plaintiff has not cited any authority establishing her ability to state a claim or take discovery on issues relating to the securitization of her loan.  Consequently, Plaintiff has not met her burden under Rule 56(d) and the Court should deem all facts set forth by Defendants to be undisputed and

14

enter summary judgment in favor of Defendants.  As explained above, Plaintiff has had substantial discovery on her individual claim and has extensive documents regarding the securitization of her mortgage and the foreclosure process.

Because Plaintiff has offered no substantive opposition to summary judgment, the instant reply addresses only the procedural issues raised in Plaintiff's response.  In the event the Court finds cause to excuse Plaintiff's failure to respond and allows Plaintiff to make a substantive response, Defendants respectfully request and expressly reserve a right to file a substantive reply brief.

## **Conclusion**

US Bank held Plaintiff's note at the time of her foreclosure and therefore properly foreclosed on her property under Missouri UCC principles.  Likewise, numerous authorities, including from this District, establish that Plaintiff has not stated a viable claim for estoppel based upon loan modifications.  Given Plaintiff's failure to cite any authorities justifying her wide-ranging discovery requests or articulating how the discovery she seeks relates to the legal issues raised in Defendants' Summary Judgment Motion, Defendants respectfully request this Court grant their Summary Judgment Motion.

Respectfully submitted,

BRYAN CAVE, LLP

 /s/ Eric D. Martin
Eric D. Martin, USDC #: 47558MO
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO  63102
Telephone: (314) 259-2000
Fax: (314) 259-2020
E-mail: eric.martin@bryancave.com

Ashley H. Nall, USDC #: 59960MO
161 North Clark Street, Suite 4300
Chicago, Illinois 60601
Telephone: (312) 602-5097
Fax: (312) 698-7497
E-mail: ashley.nall@bryancave.com


*Attorneys for Defendants US Bank, N.A. and Wells Fargo Bank, N.A.*

**CERTIFICATE OF SERVICE**

   I, hereby certify that on February 17, 2012, the foregoing was filed electronically with the Clerk of Court to be served to the following by operation of the Court's electronic filing system:

  Gregory P. White
  8000 Bonhomme, Suite 316
  Clayton, Missouri 63105

  Peter M. Westoff
  7751 Carondelet, Suite 800
  Clayton, Missouri 63105

  John Campbell
  800 Market Street, Suite 1700
  St. Louis, Missouri 63101

  Jerome Wallach
  Wallach Law Firm
  3 City Place Drive, Suite 1070
  St. Louis, Missouri 63141

  Attorneys for Plaintiff

               /s/ Eric D. Martin